UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES A. RORISON,

　　　　Plaintiff,

v.

INLAND PIPE REHABILITATION, LLC,
STRENGTH CAPITAL PARTNERS,
MARK McCAMMON, and
ROBERT STEINBERG,

　　　　Defendants.

Case No.
Hon.
Mag. Judge

---

STEPHEN F. WASINGER PLC
Counsel for Plaintiff
Stephen Wasinger (P25963)
300 Balmoral Centre
32121 Woodward Avenue
Royal Oak, MI 48067
Tel: (248) 544-7097
sfw@sfwlaw.com

---

## COMPLAINT AND JURY DEMAND

Plaintiff JAMES A. RORISON ("Rorison") files this complaint against defendants INLAND PIPE REHABILITATION, LLC ("IPR"), STRENGTH CAPITAL PARTNERS ("SCP"), MARK McCAMMON ("McCammon"), and ROBERT STEINBERG ("Steinberg") seeking damages as well as declaratory and injunctive relief.

## PARTIES

1.      Plaintiff Rorison is a resident and citizen of Texas.

2.      Defendant IPR is a Michigan limited liability company with its principal place of business in Michigan.

3.      Defendant SCP is a Michigan partnership with its principal place of business in Michigan.

4.      Defendant McCammon is, on information and belief, a resident and citizen of Michigan or a state other than Texas.

5.      Defendant Steinberg is, on information and belief, a resident and citizen of a state other than Texas.

## JURISDICTION AND VENUE

6.      Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because the plaintiff is a resident of a different state from the defendants and because amount in controversy exceeds $75,000.

7.      Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Rorison's claims occurred in the Eastern District of Michigan.

## FACTUAL BACKGROUND

8.      On or about July 12, 2011, Rorison entered into a written employment

contract with IPR as well as a non-compete agreement (collectively the "Employment Contract").  Defendants possess a copy of the Employment Contract.

9.      On or about August 1, 2011, Rorison entered into a Grant Agreement (the "Grant Agreement"), pursuant to which IPR granted Rorison 100,000 shares under the IPR Phantom Stock Plan (the "Plan").  Defendants possess a copy of the Grant Agreement.

10.     Rorison was employed by IPR through August 28, 2015.

11.     On August 28, 2015, Robert Steinberg and Ray Cuevas notified Rorison that his position was being eliminated due to a change in strategic direction and that his severance payments as outlined in his Employment Agreement would be honored.

12.     IPR, IPR's management and IPR's board (including, Joseph Cutillo, McCammon and Steinberg) each by words and deeds repeatedly confirmed to Rorison that IPR had no basis for claiming that Rorison had engaged in "wrongful conduct" as defined by the Employment Agreement or the Grant Agreement. (Defendants possess the documents, including IPR's Special Committee Findings and Conclusions, which evidence and support this allegation.  The documents are incorporated by reference.  *See* Paragraphs 24-25.)

13.     Indeed, during an IPR board meeting on August 13, 2015, Mr.

- 3 -

Steinberg and Mr. McCammon each confirmed that there was no basis for determining that Mr. Rorison had engaged in wrongdoing.  At the meeting, Messrs. McCammon and Steinberg each praised Mr. Rorison's talents and made clear that there was no basis for terminating Mr. Rorison for cause.  For example, Mr. Steinberg stated to IPR's board:  ". . . Jim works his ass off, he is very capable, very smart, works very hard. . . ."  Discussing the fact that Mr. Rorison was greatly overworked because he had "everything on his plate":  "No one guy can do as much as Jim tried to do. . . .  I like working with Jim, I have confidence in Jim. . . ."

14.    At the time Rorison left IPR's employment, Rorison was entitled to severance pay under the Employment Agreement and the redemption of his vested shares under the Grant Agreement.

15.    IPR had an obligation under the Employment Agreement and the Grant Agreement to act in good faith and to deal fairly with Rorison so as not to derive Rorison of his reasonable contractual expectations.

16.    At the time Rorison left IPR's employment, Rorison was entitled to receive a letter of recommendation from IPR which confirmed that there was no basis for terminating Rorison for cause and praising Rorison's efforts as an officer and employee of IPR.  IPR, through Joseph Cutillo and Kevin Robinson, had expressly promised this letter to Rorison as an inducement to Rorison's continued

employment at IPR.

17.     In breach of the Employment Agreement and its covenant of good faith and fair dealing, IPR, in bad faith, failed and refused to make the first severance payment due under the Employment Agreement in September, 2015.

18.     In breach of its agreement and obligation to deal with Rorison in good faith, IPR, in bad faith, failed and refused to provide the letter of recommendation to which Rorison was entitled; and IPR, in bad faith, refused to acknowledge, as IPR was required to acknowledge, that Rorison had separated from IPR for reasons which had nothing to do with Rorison's failure to perform any duty owed to IPR.

19.     In breach of the Grant Agreement and covenant of good faith and fair dealing, IPR has failed and refused to redeem Rorison's vested shares; and (for reasons explained in Paragraphs 23 and 24 and in documents incorporated by reference in Paragraph 24 below) IPR, in concert with SCP, McCammon and Steinberg, engaged in manipulations which had the known and intended effect of denying Rorison the value of his vested shares.

20.     When IPR first refused to make a severance payment due under the Employment Agreement, Rorison wrote to McCammon seeking an explanation for IPR's refusal to make the severance payment.  McCammon in bad faith refused to provide an explanation.  However, McCammon at no time notified Rorison that the

- 5 -

severance was not paid as a result of Rorison's breach of any obligation he owed to

IPR or because of any conduct which might be considered cause for termination

under the Employment Agreement.

21.    Rorison made repeated requests for an explanation from IPR and

McCammon for the refusal to pay severance.  Repeatedly, IPR and McCammon in

bad faith refused to provide an explanation.

22.    As a result of his efforts to understand why IPR had refused to pay

severance due under the Employment Agreement and refused to redeem his

vested shares under the Grant Agreement, Rorison discovered that IPR, SCP,

McCammon and Steinberg had engaged in a conspiracy which had the known and

intended effect of defaming Rorison, tortiously interfering with Rorison's economic

advantage and depriving Rorison of the benefits to which he would have been

entitled under his Employment Agreement and his Grant Agreement.

23.    Among other things, as part of their bad faith and tortious actions, IPR,

SCP, McCammon and Steinberg caused material changes in IPR's accounting so as

to benefit themselves at the expense of others, including Rorison, who held equity

interests in IPR.

24.    Rorison notified IPR, SCP, McCammon and Steinberg in writing of the

facts and circumstances that demonstrated their tortious conduct, including in

letters addressed to IPR, its counsel, and IPR's board (with copies to McCammon and Steinberg).  Rorison's written notices included a letter dated January 8, 2016, to IPR's board as well as a letter dated January 15, 2016, to counsel for IPR, SCP, McCammon and Steinberg.  Rorison's letters and emails are in the possession of Defendants and their counsel; and Rorison incorporates by reference the letters and emails as well as the documents (including the IPR Special Committee Report) referenced in the letters and emails.

26. Defendants, through their counsel, have insisted that Rorison cannot publish his letters or other documents referenced in Paragraph 24 because doing so would cause Rorison to violate confidentiality duties owed to IPR.  While Rorison disagrees, Rorison has chosen not to attach the letters, emails and other documents as exhibits to this complaint until a determination can be made by this Court about the scope of Rorison's confidentiality obligations.  However, Rorison incorporates those documents by reference.

26. By his letters dated January 8 and 15, 2016, Rorison also demanded that Defendants retract their defamatory statements and pay compensatory and punitive damages proximately caused by their tortious conduct.

27. Defendants have refused to retract their defamatory statements and have continued to repeat those defamatory statements to third parties.

- 7 -

## COUNT I:
## BREACH OF EMPLOYMENT AGREEMENT

28.     Rorison realleges Paragraphs 1 through 27.

29.     IPR has in bad faith materially breached its obligations under the Employment and Grant Agreements.

30.     Rorison has performed all of his obligations under the Employment Agreement, except for obligations whose performance was prevented by IPR's breaches.

31.     As a direct and proximate result of IPR's bad faith, material breaches, Rorison has suffered damages and will continue to suffer damages, including, without limitation:

   a.    the amount of the severance payments due under the Employment Agreement;

   b.    additional payments to compensate Rorison and place him in the position he would have been had IPR not breached its obligations under the Employment, Grant and Non Compete Agreements, including payments for additional months that Rorison has been prevented from obtaining new employment as a result of IPR's contractual breaches and tortious conduct; and

   c.    actual costs, including attorney fees, required to obtain benefits promised to Rorison and protect Rorison from additional adverse economic consequences proximately caused by Defendants' misconduct.

## COUNT II:
## BREACH OF GRANT AGREEMENT

32.     Rorison realleges Paragraphs 1 through 31.

33.     IPR has in bad faith materially breached its obligations under the Grant

Agreement.

34.     Among other things, IPR, in concert with SCP, McCammon and

Steinberg, has caused material changes in IPR's accounting so as to benefit

themselves at the expense of Rorison in a wrongful attempt to diminish or destroy

the value of Rorison's equity interest and deprive Rorison of the fruits of a sale of

IPR at a price substantially higher than IPR claims is the value of Rorison's equity.

35.     Rorison has performed all of his obligations under the Grant

Agreement, except for obligations whose performance was prevented by IPR's

breaches.

36.     As a direct and proximate result of IPR's material breaches, Rorison

has suffered damages and will continue to suffer damages, including, without

limitation, the value of the shares which IPR was required to redeem under the

Grant Agreement based on the true value of the shares.

## COUNT II:
## BREACH OF AGREEMENT TO PROVIDE
## LETTER OF RECOMMENDATION

37.     Rorison realleges Paragraphs 1 through 36.

- 9 -

38.     IPR has in bad faith materially breached its obligations to provide Rorison with a letter of recommendation.

39.     Rorison has performed all of his obligations which were a condition receiving a letter of recommendation, except for obligations whose performance was prevented by IPR's breaches.

40.     As a direct and proximate result of IPR's bad faith and material breaches, Rorison has suffered damages and will continue to suffer damages, including, without limitation, the loss of compensation and other benefits which Rorison would have obtained if IPR had not breached its agreements with Rorison, including the agreement to provide a letter of recommendation.

## COUNT IV:
## DEFAMATION

41.     Rorison realleges Paragraphs 1 through 40.

42.     Defendants, individually and in concert, have made oral and written statements to third parties which falsely accused Rorison of inappropriate conduct. In support of this allegation, Rorison relies on facts and circumstances stated in Rorison's communications with Defendants, including in Rorison's letters dated January 8 and 15, 2016, and the IPR Special Committee Findings and Conclusions. *See also* Paragraphs 12, 23-24 above.

- 10 -

43. Defendants' false and defamatory statements concerning Rorison's professional and business reputation were made maliciously and with an intent to harm Rorison and Rorison's professional reputation and career.

44. Defendants have on occasion claimed that third parties are responsible for defamatory conduct. In doing so, Defendants ignore the undisputed facts that Defendants alone executed and published the defamatory statements (including management letters issued to IPR's accountants). Thus, Defendants' own conduct not only defamed Rorison but allowed others to do so; and, as a result, Defendants are liable not only for their own conduct but for the conduct of others which was proximately caused by Defendants.

45. Defendants negligently or with actual malice published the false and defamatory statements regarding Rorison to third parties, including IPR's creditors, investment bankers and other persons doing business with IPR.

46. Defendants' defamatory statements have a tendency to, and did, prejudice Rorison in the conduct of its business and deter others from dealing with Rorison.

47. As a direct and proximate result of Defendants' conduct, Rorison has been impaired in his ability to earn a living and has sustained and will continue to sustain loss of income.

48.     Defendants' statements made were not privileged.

49.     Rorison has demanded, but Defendants have failed to issue, a retraction.

50.     On information and belief, Defendants have continued to publish the defamatory statements about Rorison.

51.     As a direct and proximate result of Defendant's wrongful conduct, Rorison has suffered substantial economic injury, loss of goodwill, harm to his business and professional business reputation, loss of esteem and standing in the community, and loss of business opportunities.

52.     As a direct and proximate result of the wrongful conduct of IPR, SCP, McCammon and Steinberg, Rorison has suffered compensatory and punitive damages in an amount presently undetermined but believed to exceed $2,500,000.

### COUNT IV:
### Tortious Interference With Economic Advantage

53.     Rorison realleges Paragraphs 1 through 52.

54.     Rorison had advantageous relationships with the persons doing business with IPR, SCP and the accountants for and creditors of IPR and SCP.

55.     IPR, SCP, McCammon and Steinberg have individually and jointly and severally intentionally, wrongfully and purposely interfered with Rorison's

advantageous economic relationship.  In support of this allegation, Rorison relies on facts and circumstances stated in Rorison's communications with Defendants, including in Rorison's letters dated January 8 and 15, 2016.  *See also* Paragraphs 20-22 above.

56.     By publishing the false and defamatory statements about Rorison, as well as by other actions and statements, Defendants have interfered with, and continue to interfere with, Rorison's prospective advantage and induced prospective employers not to do business with Rorison.

57.     As a direct and proximate result of the wrongful conduct of IPR, SCP, McCammon and Steinberg, Rorison has suffered compensatory and punitive damages in an amount presently undetermined but believed to exceed $2,000,000.

WHEREFORE, Rorison prays that this Court:

A.     Declare that, as a direct and proximate result of IPR's contractual breaches and tortious conduct, Rorison is no longer bound by any restrictive covenants which might otherwise exist under the Employment Agreement and the Grant Agreement;

B.     Enjoin Defendants, jointly and severally, as well as those acting in concert with Defendants, from publishing defamatory statements about Rorison;

C.     Order Defendants, jointly and severally, to publish a retraction to the

same persons and in the same manner as the defamatory statements were published;

D.     Enter judgment against IPR for Rorison's compensatory damages proximately caused by IPR's contractual breaches in an amount presently undetermined but believed to substantially exceed $500,000;

E.     Enter judgment against Defendants, jointly and severally, for all compensatory, exemplary and punitive damages proximately caused by Defendants' tortious conduct in an amount presently undetermined but believed to substantially exceed $2,500,000;

F.     Award Rorison interest, costs and attorneys' fees; and

G.     Grant any other appropriate relief.

## JURY DEMAND

Rorison demands a jury trial.


STEPHEN F. WASINGER PLC
Counsel for Plaintiff

By:   _/s/ Stephen Wasinger_
    Stephen Wasinger (P25963)
300 Balmoral Centre
32121 Woodward Avenue
Royal Oak, MI 48067
Tel: (248) 544-7097
Fax: (248) 479-0391
sfw@sfwlaw.com

Dated:  March 29, 2016

- 15 -